**Ernest M. SPURLOCK, Petitioner,**

v.

**DEPARTMENT OF JUSTICE, Respondent.**

**No. 89–3232.**

United States Court of Appeals, Federal Circuit.

Jan. 25, 1990.

R. Travis Douglas, Kenner, La., argued for petitioner.

David W. Long, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for respondent. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., David M. Cohen, Director and Stephen J. McHale, Asst. Director.

Before MARKEY, Chief Judge,
RICH, Circuit Judge, and COWEN,
Senior Circuit Judge.

COWEN, Senior Circuit Judge.

Petitioner, Ernest M. Spurlock (Spurlock), seeks review of the final order of the Merit Systems Protection Board (board), 39 M.S.P.R. 670, which sustained the adverse action by the Immigration and Naturalization Service (INS or agency), Department of Justice against Spurlock. The agency suspended petitioner from duty without pay for 90 days and demoted him from GS–9 to GS–7. For the reasons to be set forth, the board's decision is reversed and the case is remanded.

## BACKGROUND

The material facts in this case are essentially uncontroverted. On October 24, 1985, INS Border Patrol Agents Spurlock and his partner, Joseph C. Bashaw, were advised by the New Orleans Border Patrol Sector Headquarters that an alien who did not speak English was in custody of the Harbor Police. The agents took custody of the alien, Myroslaw Medvid (Medvid), a Russian seaman who had deserted his ship, the M/V Marshal Koniev, then moored in Belle Chasse, Louisiana. The agents then transported Medvid to the border patrol sector headquarters in New Orleans. After ascertaining that Medvid was a Ukranian who did not speak English, Spurlock arranged with Ms. Irene Padoch to serve as an interpreter during Spurlock's interrogation of Medvid, which was done for the purpose of, *inter alia,* enabling Spurlock to complete a form entitled "Record of Deportable Alien." The interrogation of Medvid was conducted entirely by telephone. In addition to obtaining biographical data regarding Medvid as required by the form, Spurlock asked him several times why he had jumped ship. Medvid's reply was "for many reasons." On at least three occasions, Spurlock asked Medvid if he desired political asylum, and the answer in each case was in the negative, coupled with a statement that Medvid just did not want to return to his ship. Near the end of the interview, Spurlock requested the interpreter to again ask Medvid why he had deserted his ship. There followed a brief discussion in the Ukranian language between the interpreter and Medvid, after which she stated that his response was "for moral and political reasons." Spurlock then entered the answer on the form and in his testimony gave the following explanation: "I saw no reason not to put it on there, because I'd already asked him several times if he wanted political asylum and why he had jumped ship and I put it on the [form]."

Thereafter, by letter of November 15, 1985, Spurlock was notified that he would be suspended from duty for a period of ninety days and demoted from his current position of GS–9 to GS–7 for violation of the agency's operating instruction § 208.8, which provides in pertinent part as follows:

(b) *Notification.* When it comes to the attention of any Service employee that a person as described above may be seeking asylum, the district director will be notified immediately and furnished all the pertinent facts of the case, including the alien's identity, nationality, newsworthiness or prominence, and reason(s) given for requesting asylum. If the district director agrees that the asylum applicant falls into the immediate action category, he will expeditiously relate the facts of the case to the Associate Commissioner, Examinations, Central Office, or the Central Office duty officer, and the appropriate regional official. The Associate Commissioner, Examinations, or the Central Office duty officer will alert the Service's Public Information Officer and the Department of State's operation officer, telephone 202–032–1512 of the request for asylum.

Spurlock appealed to the MSPB regional office, and after a hearing, the administrative judge reversed the agency's action, finding: (1) that the agency had failed to prove, by a preponderance of the evidence, that Medvid had requested political asylum; (2) that Medvid specifically stated that he was not seeking asylum; and (3) therefore, that operating instruction § 208.8 did not apply and could not have been violated.

The board granted the agency's petition for review and reversed the decision of the administrative judge, holding that Spurlock had violated the regulation in issue. In construing the regulation, the board declared that a determination of whether the regulation was violated "depends on an analysis of what a reasonable and knowledgeable Border Patrol Agent may perceive about the situation at hand, considering all the circumstances." The board then found that the circumstances were more than sufficient to show that Spurlock should have been aware that Medvid was seeking political asylum in the United States.

## DISCUSSION

We agree with the board's interpretation of the regulation on the standard to be applied in determining whether Spurlock violated the regulation. However, after studying the entire record, including the reporter's transcript of the testimony adduced at the hearing before the administrative judge, we have concluded that the board's finding is not supported by substantial evidence.

█ In order to determine whether the board's finding is supported by substantial evidence, it was necessary for the court to "canvas" the entire record, because "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. National Labor Relations Bd.,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Exaggeration, inherent improbability, self-contradiction, omissions in a purportedly complete account, imprecision, and errors detract from the weight to be accorded the evidence upon which an administrative board bases its decision. *Sternberger v. United States,* 401 F.2d 1012, 1016, 185 Ct.Cl. 528 (1968).

█ In its ultimate finding, the board relied heavily on the statement in the report filed by Spurlock, that Medvid had jumped ship for moral and political reasons. However, we find there is much in the record which detracts from the weight that was given to that statement by the board.

On October 27, 1985, three days after Spurlock had interrogated Medvid, Spurlock was questioned under oath by an INS investigator. The INS letter of November 15, 1985, which notified Spurlock that he would be demoted and suspended without pay, contained the following report of that investigation:

> On October 27, 1985, you were questioned under oath by a Service investigator. You were asked by the investigator: "Did you ask the subject his reasons for leaving the ship?" You responded: "Yes, the interpretation of his response was 'many reasons'." The investigator asked you: "Did you attempt to have the subject specify those reasons?" You replied: "Yes, at least three or four times I restated the question and finally asked

the subject if the reasons were political or what". You were then asked by the investigator: "Did the subject ever state that there were political reasons?" You responded: "No, he just continually stated that he did not wish to return to the ship. Ms. Padoch had a discussion with the subject and after considerable time stated that he had 'moral' and 'political' reasons for not returning to the ship."

There is an obvious conflict between Medvid's responses to Spurlock's questions and the answer which the interpreter reported after her discussion with Medvid.

The record shows that in taking the adverse action against Spurlock, the INS relied upon statements given to it by the interpreter. In view of that fact and the conflict in the report of the investigation, the INS must have known that Padoch was not only an important but an essential witness in the hearing before the administrative judge on Spurlock's appeal. We find no explanation in the record why the INS failed to produce Padoch as a witness on the agency's behalf at the hearing. As a result of the failure of Padoch to testify, we do not know the content of her discussion with Medvid, following which she told Spurlock that Medvid had given the answer which Spurlock entered in his report. Padoch had heard Medvid's responses to Spurlock's questions to the effect that Medvid had not jumped ship for political reasons. Had she testified and been subjected to cross-examination, the conflict to which we have referred might have been resolved. These circumstances greatly weaken the weight of the evidence upon which the board relied principally in its finding against Spurlock.

At the hearing before the administrative judge, the INS stipulated to the admission in evidence of the report of a polygraph examiner dated March 21, 1986. The report confirmed that upon polygraph examination, Spurlock had asked the interpreter on "at least three or four occasions" to inquire whether or not Medvid was seeking political asylum in the United States. According to the examiner's report, the interpreter did not state that Medvid was re-

questing political asylum. Here again is uncontested evidence which is in conflict with the evidence upon which the board relied so heavily and we view it as another circumstance which detracts from the weight of the evidence upon which the board based its finding.

The administrative judge also found that at the hearing, the INS did not contest Spurlock's claim that "Medvid had specifically and repeatedly stated that he did not want political asylum". The finding is unchallenged.

In the hearing, the administrative judge found on the basis of undisputed evidence, that during the interview with Medvid, Spurlock asked him several times whether he was requesting political asylum, and in each instance the answer was no. Spurlock's testimony in this regard was confirmed by the testimony of Bashaw.

It is also undisputed that several days after the interview by Spurlock, Medvid was given another chance to request asylum after he had been taken into American custody again, and he elected to return to Russia.

At the time he questioned Medvid, Spurlock had more than 17 years experience as a Border Patrol Agent. He had received training in administering appropriate asylum procedures and had processed cases involving aliens who requested political asylum in the United States. He had also handled a number of cases in which alien seamen had deserted their ships. In his experience most of them "jumped ship" because of inadequate pay, disputes with the captain, or because they had relatives in the United States. Although Spurlock was not familiar with the regulation involved here, he knew that requests for political asylum should be referred to the District Director for handling. He testified that he was also aware that if he was faced with a sensitive matter or with a question of how to proceed, he should get in touch with his supervisor. However, he also testified that under all the circumstances connected with the case, he did not consider that he was faced with a sensitive matter, and that Medvid appeared to him to be no

more than a disgruntled seaman who should be handled as a routine crewman deserter.

From a study of the entire record, we are convinced that the overwhelming weight of the evidence is contrary to the board's finding. Therefore, the board's decision that the agency had satisfied its evidentiary burden, was unreasonable. *Cf. Naekel v. Department of Transp.*, 782 F.2d 975, 978 (Fed.Cir.1986); *Frantz v. Office of Personnel Management*, 778 F.2d 783, 787 (Fed. Cir.1985).

## CONCLUSION

We "cannot conscientiously find that the evidence supporting [the board's] decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." *Universal Camera*, 340 U.S. at 488, 71 S.Ct. at 465. Therefore, the board's decision is reversed and the case is remanded with instructions that Spurlock's suspension be cancelled; that he be restored to his former position retroactive to March 16, 1985, and that he be awarded back pay and other relief to which he may be entitled in accordance with this decision.

## COSTS

The government to bear the costs of this appeal.

REVERSED AND REMANDED.