**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| BRUCE FLEMING,<br>　　　　　Appellant,<br><br>　　　　v.<br><br>DEPARTMENT OF THE NAVY,<br>　　　　Agency. | DOCKET NUMBER<br>PH-0752-18-0457-I-1<br><br><br>DATE:  January 26, 2024 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jason H. Ehrenberg, Esquire, Washington, D.C., for the appellant.

Alison Gray, Esquire, Washington, D.C., for the agency.

Terrence P. Cook, Esquire, Annapolis, Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The agency has filed a petition for review of the initial decision, which reversed the appellant's removal.  The appellant has filed a motion to dismiss the agency's petition for failure to provide interim relief.  For the reasons discussed below, we DENY the appellant's motion to dismiss, GRANT the agency's

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

petition for review, and REVERSE the initial decision. The agency's action is SUSTAINED.

## BACKGROUND

The appellant is a tenured Professor of English at the U.S. Naval Academy in Annapolis, Maryland. At issue are certain aspects of the appellant's conduct in teaching first-year Rhetoric & Introduction to Literature, HE 111, during the fall semester of the 2017/2018 academic year. In January 2018, five different students filed complaints with the Vice Academic Dean alleging that the appellant had made various offensive comments, discussed inappropriate matters during class, and engaged in other unprofessional conduct. Initial Appeal File (IAF), Tab 7 at 115-34. The Vice Academic Dean directed the Director of the Division of Humanities and Social Sciences to supervise a fact-finding inquiry. *Id.* at 114.

The Division Director assembled a panel of three senior faculty members, who interviewed the students from the appellant's fall classes, as well as two other students whose names had come up regarding one matter. *Id.* at 135-89; IAF, Tab 8 at 4-119. The appellant was invited to address the panel, but he declined to do so. IAF, Tab 8 at 120-21; IAF, Tab 28 at 91. He did reply by email, IAF, Tab 8 at 123, and he also sent an email message to the entire faculty in which he generally complained about the unfairness of the process, *id.* at 130. Thereafter, the panel issued a report finding that a number of the matters as described in the complaints had occurred and qualified as unprofessional behavior. IAF, Tab 7 at 97-113.

On June 26, 2018, the Division Director proposed the appellant's removal on a charge of Conduct Unbecoming a Federal Employee with seven specifications. The agency alleged that the appellant: (1) referred to students as "right-wing extremists"; (2) made comments about and discussed anal sex, oral sex, and transgender surgery; (3) emailed partially clothed photos of himself to students after having been counseled that doing so was inappropriate and agreeing

to refrain from doing so; (4) touched students without their approval; (5) referred to his own sexual experiences; (6) repeatedly mispronounced an Asian-American student's name despite being corrected several times; and (7) made demeaning, sexually related comments about a child and her mother because of how they were dressed.[2] *Id.* at 79. After the appellant responded, the Academic Dean and Provost issued a decision sustaining all seven specifications and removing the appellant effective August 17, 2018. *Id.* at 18-21, 33.

The appellant filed a Board appeal contesting the merits of the removal and raising several affirmative defenses, including retaliation for whistleblowing, violation of his First Amendment rights, and harmful procedural error. IAF, Tabs 1, 30. After a hearing, the administrative judge issued an initial decision not sustaining any of the seven specifications and reversing the removal on that basis. IAF, Tab 33, Initial Decision (ID). The administrative judge considered the appellant's affirmative defenses but found that he failed to prove them. ID at 16-17. He ordered the agency to provide interim relief if either party filed a petition for review. ID at 19.

The agency has filed a petition for review, Petition for Review (PFR) File, Tab 7; the appellant has filed a response, PFR File, Tab 13; and the agency has filed a reply, PFR File, Tab 16. The appellant has also moved to dismiss the agency's petition for failure to comply with the interim relief order, PFR File, Tab 11, and the agency has responded in opposition to that motion, PFR File, Tab 12.

## ANALYSIS

The agency is in compliance with the administrative judge's interim relief order.

If the appellant is the prevailing party in the initial decision and the administrative judge orders interim relief, a petition for review filed by the

---

[2] In proposing the appellant's removal, the agency considered that he had previously been issued a Letter of Reprimand for disclosing a student's personally identifiable information. IAF, Tab 7 at 81. The Reprimand was issued on May 11, 2018. *Id.* at 94.

agency must be accompanied by a certification that the agency has complied with the interim relief order, either by providing the interim relief ordered, or by making a determination that returning the appellant to the place of employment would cause undue disruption to the work environment. *Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 6 (2015); 5 C.F.R. § 1201.116(a); *see* 5 U.S.C. § 7701(b)(2)(A)(ii). If an agency makes a determination that an employee will pose an undue disruption, it must nonetheless return the employee to a pay status pending the outcome of its petition for review, and provide "pay, compensation, and all other benefits as terms and conditions of employment" pending the outcome of the petition for review. 5 U.S.C. § 7701(b)(2)(B). The Board's review of interim relief is limited to determining whether the agency actually made an undue disruption determination and whether the employee has received appropriate pay and benefits. The Board does not have the authority to review the merits of an undue disruption determination. *King v. Jerome*, 42 F.3d 1371, 1375-76 (Fed Cir 1994).

In this case, the agency's petition for review was accompanied by a certification that it has complied with the administrative judge's interim relief order by reinstating the appellant to his position, effective the date of the initial decision, and a Standard Form 50 (SF-50), Notification of Personnel Action, reflecting the interim appointment. PFR File, Tab 7 at 61, 63. The certification states, however, that the appellant has not been returned to the classroom. *Id*. at 61. In support of the certification, the agency has submitted a declaration by the Academic Dean and Provost, stating that based on the seriousness of the charged misconduct, he determined that the appellant's presence in the classroom and his engaging with midshipmen in any advisory role would be an undue disruption to the workplace. *Id.* at 65. He emphasized that his determination was guided by the Naval Academy's responsibility to provide a positive and supportive classroom and advisory environment which respects the dignity of the individual, promotes the education and professional development of future Navy

and Marine Corps leaders, and ensures the wellbeing of the midshipmen. *Id.* at 66. The agency has also submitted a copy of the Academic Dean and Provost's August 7, 2019 letter to the appellant explaining that, for the reasons set forth above, in lieu of teaching and advising midshipmen, his assignments during the pendency of the petition will include scholarly research and writing and service to the school. *Id.* at 67.

In his motion to dismiss, the appellant argues that the agency has failed to provide the necessary interim relief because, by not allowing him to teach, it has denied him the possibility of receiving student and peer evaluations, which are a significant component of yearly considerations in the merit pay increases that are a condition of his employment. PFR File, Tab 11. The appellant likens merit pay increases to overtime which is required as part of interim relief when the employee proves that he is entitled to it as a condition of employment. *Id.* at 7.

In its response to the appellant's motion, the agency argues that the three performance elements for Academy faculty that form the basis for merit increases are teaching, scholarship, and service, and that, when a faculty member does not perform tasks in one of the elements during the rating period, the member is still eligible for a merit increase based on the element(s) in which he or she has performed tasks.[3] PFR File, Tab 12 at 6-7. Thus, the agency argues that, when the appellant is eligible for a merit increase, it will be based on his performance in the elements of scholarship and performance. *Id.* at 7. In support of its position, the agency has submitted a declaration under penalty of perjury by the Vice Academic Dean, who oversees the Academy's performance plan program. *Id.* at 16. The agency also disputes the appellant's argument that merit increases should be considered like overtime. *Id.* at 11-12.

We find that the agency has met its initial burden of demonstrating that it is in compliance with the administrative judge's interim relief order. Specifically,

---

[3] As an example, the agency references a professor who, because of absence due to maternity leave, is not in the classroom for a portion of time during the rating period and is therefore not rated on the teaching element. PFR File, Tab 12 at 7, 19.

the agency has:  (1) certified its compliance; (2) submitted an SF-50 showing that the appellant has been given an interim appointment to his Professor position at his previous adjusted basic pay, effective the date of the initial decision; (3) made a determination that returning him to the classroom would pose an undue disruption; and (4) so advised the appellant.

Therefore, the only remaining issue is whether the appellant has been denied pay, compensation, or other benefits as terms and conditions of employment, during the pendency of the petition for review.   5 U.S.C. § 7701(b)(2)(B).  We find that he has not.  The evidence submitted by the agency shows that merit increases for faculty are not automatic, PFR File, Tab 12 at 18, 21, and not a condition of employment.[4]  In any event, the agency has shown that the appellant's absence from the classroom will not automatically preclude him from receiving merit increases during subsequent academic years because his eligibility will be based on performance in the remaining two elements.  *Id.* at 19.

For these reasons, the appellant's motion to dismiss is denied.

Conduct Unbecoming.

The administrative judge correctly found that a charge of conduct unbecoming has no specific elements and that, in analyzing such a charge, the Board considers whether the conduct was improper, unsuitable, or detracting from one's character or reputation.  ID at 5; *see Social Security Administration v. Long*, 113 M.S.P.R. 190, ¶ 42 (2010), *aff'd*, 635 F.3d 526 (Fed. Cir. 2011).  The agency must prove its charge by preponderant evidence, which is the degree of relevant evidence that a reasonable person, considering the record as a whole,

---

[4] The appellant's likening of his situation to overtime is not persuasive.  Generally, overtime pay is compensation that is not required to be paid under an interim relief order.  *McLaughlin v. U.S. Postal Service*, 55 M.S.P.R. 192, 200 (1992),  The only exception is in those instances in which an employee proves that he is entitled to overtime as a term or condition of employment by virtue of law, rule, regulation, collective bargaining agreement, or binding agency policy.  *Id.*  The appellant has made no such showing regarding merit increases.

would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. §§ 1201.4(q), 1201.56(b)(1)(ii).

Specification (1) is sustained.

In this specification, the agency alleged that the appellant referred to two students as "right-wing extremists" or words to that effect.  IAF, Tab 7 at 79.  In an email dated September 26, 2017, he referred to the two as "my right-wing extremists," and then critiqued what he perceived as their unsupported positions on issues about which they had written (anti-gun control and anti-taxes) in connection with an assignment.  IAF, Tab 8 at 135.  In his initial decision, the administrative judge noted that, in the email, the appellant stated that he would have sent the same email to "left-wing extremists," and that "this is not a left-right thing.  It's a justify that thing."[5]  ID at 11; IAF, Tab 8 at 135.  Finding that the email was not "politically discriminatory," the appellant's real message to the students was that they must provide supporting arguments for positions they take, and that is a completely appropriate criticism for a student paper, the administrative judge concluded that the specification does not describe misconduct.  ID at 11-12.

On review, the agency argues that the email was unprofessional because it detracted from the appellant's role as a supervisor, and that, in sending the email, he abdicated his responsibility to be a role model for the students and to show them dignity and respect.  PFR File, Tab 7 at 20-21.  The agency asserts that it charged the appellant with conduct unbecoming, not political discrimination.  *Id.* at 19-20.

That the appellant sent this email is not in dispute.  What is in dispute is whether the email constitutes actionable misconduct.  We find that it does, particularly in the setting of the U.S. Naval Academy.  The mission of the Academy is to develop midshipmen morally, mentally, and physically, and it is

---

[5] The investigatory panel did not find any negative outcomes for any students based on their political beliefs.  IAF, Tab 7 at 99.

expected of all members, military or civilian, that they be examples of the principles the Academy is trying to teach—honor, courage, and commitment. Hearing Transcript (HT) at 11 (testimony of the Commandant of Midshipmen). Midshipmen are supposed to be taught, by word and example, that treating others with dignity and respect is a core tenet of the military professional. HT at 9-10 (testimony of the Commandant of Midshipmen). Therefore, certain types of conversations, which between peers might be considered "joking around," are not acceptable in the very different context of a senior-subordinate relationship. HT at 37-39 (testimony of the Commandant of Midshipmen). The testimony of the Commandant of Midshipmen was echoed by other witnesses, who likewise emphasized the values of dignity and respect, the role of a service academy to instill these values into future officers, and the responsibility of the faculty to exemplify them. HT at 41-42, 45-46, 68, 70 (testimony of a Professor of Mechanical Engineering), 166-67, 174-75 (testimony of the Academic Dean and Provost), 301 (testimony of a Professor of English). Naval Academy instructors have the right to academic freedom within the classroom, but there is a difference between proper pedagogical activities and behavior that is unprofessional or pedagogically inappropriate, and instructors are expected to treat their students with dignity and respect. IAF, Tab 8 at 149-50, Academic Dean and Provost Instruction 1531.63C (Apr. 1, 2016).

We agree with the witnesses who testified that, by labeling two of his students "right-wing extremists," the appellant failed in his duty to treat them with dignity and respect. HT at 16 (testimony of the Commandant of Midshipmen), 308 (testimony of a Professor of English). This specification is sustained. *See Dolezal v. Department of the Army*, 58 M.S.P.R. 64, 66-67 (1993) (upholding a conduct unbecoming charge based on disparaging and demeaning comments the appellant made in an email about a subordinate).

Specifications (2) and (5) are sustained.[6]

In specification (2), the agency charged that, during class, the appellant made comments regarding oral sex, anal sex, and transgender surgery, and in specification (5), that he made comments referring to his own sexual experiences. IAF, Tab 7 at 79. The appellant did not deny discussing these matters in class, but he disagreed that the discussions were inappropriate. *Id.* at 125, 133.

The administrative judge agreed with the appellant. He found that the deciding official failed to consider whether the academic context warranted the discussion of sexual topics, particularly in light of the appellant's academic writing on transgender issues. He further found that there did not appear to be a rule or policy against discussing such topics or the appellant's own sexual experiences, and that the appellant was not on notice that such discussions were forbidden or greatly restricted. Therefore, the administrative judge found that the allegations in specifications (2) and (5) did not constitute actionable misconduct, and for that reason, he did not sustain them. ID at 12-13.

On review, the agency argues that conduct unbecoming does not necessarily require violation of a specific rule, and that there is sufficient evidence to show that many of the appellant's remarks were off-topic or otherwise inappropriate. PFR File, Tab 7 at 22, 26-27, 42-44. We agree. There are certain academic contexts in which discussion and even explicit discussion of sexual material may be proper. However, the unrebutted hearing testimony shows that the appellant frequently perseverated on these topics even when they were completely unrelated to the course material.[7] HT at 103 (testimony of Midshipman M.D.), 162-63 (testimony of Midshipman B.G.). This testimony is consistent with the content of the students' written complaints and the greater

---

[6] We agree with the administrative judge that it is best to address these two specifications together. ID at 12-13.

[7] Regarding specification (5) in particular, it is difficult to imagine a situation in which it would be appropriate for a professor to share with the class details of his own personal sexual experiences.

part of student responses to the panel inquiry. IAF, Tab 7 at 117-21, 125-27, 129, 131-33, Tab 8 at 4-119.[8] Nor does the appellant suggest that his discussion of these matters was confined to situations in which they may have been implicated by course materials. IAF, Tab 8 at 125-26; IAF, Tab 7 at 33-34. Furthermore, even to the extent that these discussions may have been related to the course material, and allowing that it is normal for college classroom discussions to stray from the material sometimes, we still find that the nature and extent of the appellant's remarks went beyond what was appropriate.[9]

Specification (3) is sustained.

In specification (3), the agency charged that the appellant emailed partially clothed pictures of himself[10] to students, after having been counseled that doing so was inappropriate and agreeing to not do so in the future. IAF, Tab 7 at 79. This conduct was mentioned in two of the student complaints, *id.* at 121, 132, as well as in a number of interview responses, *e.g.*, IAF, Tab 8 at 61, 66, 88, 98, 104, 114, 116. In his email to the panel, the appellant denied this specification, admitting that he had only sent such a photo to a student 2 years ago, not during the timeframe at issue, and he defended that earlier action as not inappropriate, suggesting that it related to course material. *Id.* at 125-26.

In addressing this specification, the administrative judge found that there was no dispute that the appellant was counseled for sending partially clothed photos of himself to students in 2015, IAF, Tab 8 at 158-59, and that he again

---

[8] Some of the interviewees reported that the appellant discussed condom use, transgender surgery, and sexuality, yet also reported that there was no "sexually suggestive language" used.

[9] Even if we did not sustain specification 2, we find that the charge would still be sustained based upon the remaining specifications. *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (proof of one or more specifications is enough to sustain charge); *Avant v. Department of the Air Force*, 71 M.S.P.R. 192, 198 (1996) (explaining that if a single charge has multiple specifications, an agency need only prove one specification to sustain the charge).

[10] Most of the photos were of the appellant shirtless and flexing. IAF, Tab 8 at 136, 142-45.

engaged in that behavior in 2017, *id.* at 136, Tab 29 at 77-78. ID at 13. Nonetheless, the administrative judge found that, other than one midshipman, M.D., no one who received the photos appeared particularly offended by them, and that Midshipman M.D.'s claim that he was offended at receiving the photo was "hard to believe." ID at 13-14. Concluding that there was no misconduct, the administrative judge did not sustain this specification. ID at 14. The agency contests this analysis on review. PFR File, Tab 7 at 32.

We find that, regardless of whether the appellant believed that sending midshipmen shirtless photos of himself was appropriate, and regardless of whether any recipients of those photos were actually offended, his actions still amounted to conduct unbecoming. The record shows that, in the fall of 2015, the agency gave the appellant a written and verbal counseling about this very same behavior, notified him that it was inappropriate, required him to retake an anti-harassment training course, and warned him against engaging in such behavior in the future. IAF, Tab 8 at 159. The appellant acknowledged, at that time, that sending such photos of himself to students could result in allegations of impropriety, and he agreed to refrain from doing so in the future. *Id*. Yet 2 years later, the appellant disregarded the agency's warning and resumed emailing midshipmen shirtless pictures of himself. IAF, Tab 7 at 121, 132, Tab 8 at 142-45; HT at 55-56.(testimony of Professor K.L.), (testimony of Midshipman M.D.). That the appellant claims a pedagogical purpose for this is immaterial; he acted contrary to his supervisors' clearly stated expectations, and on that basis, he committed conduct unbecoming.

Specification (4) is sustained.

In specification (4), the agency alleged that the appellant touched students without their approval. IAF, Tab 7 at 79. The appellant touching students on their shoulders, head, and neck in an unwanted, unnecessary, and unprofessional manner was mentioned in several complaints, *id.* at 118, 129, 132, as well as in a number of student interviews conducted by the panel, *e.g.*, IAF, Tab 8 at 5, 13,

21, 41, 58, 66, 78. In his email to the panel, the appellant did not deny the touching, but stated that, because he "can read body language," any such touching was always welcome. *Id.* at 128.

The administrative judge found that the appellant did touch students, but there was no policy against it and no students were offended. The administrative judge therefore found that there was no misconduct, and he did not sustain this specification. ID at 14.

On petition for review, the agency disputes the administrative judge's analysis and argues that it presented sufficient evidence for the Board to sustain this specification. PFR, Tab 7 at 38, 41. We agree. The record shows that the appellant, on one or two occasions, sat next to a student in class and rubbed his back for approximately 15 seconds. HT at 148-49 (testimony of Midshipman A.B.). The appellant does not deny this behavior, IAF, Tab 7 at 106-07, and we find that it was inappropriate on its face. Furthermore, the student at issue testified, unsurprisingly, that the appellant's actions made him feel uncomfortable.[11] HT at 148-49 (testimony of Midshipman A.B.). We agree with the agency that this constituted conduct unbecoming.

Specification (6) is sustained.

In specification (6), the agency alleged that the appellant repeatedly mispronounced an Asian-American student's name despite being corrected several times. IAF, Tab 7 at 79. The student in question, Midshipman R.J., raised this matter in his complaint, stating that, "especially when angry," the appellant would call him different last names "which were common Asian last names," and that, when corrected, he "always brushed it off, . . . one time even telling [the student] to 'f*** off.'" *Id.* at 133. The student's testimony was consistent with his complaint. HT at 154 (testimony of Midshipman R.J.). Midshipman R.J. also testified that he believed that the appellant intentionally

---

[11] Although the student's feelings about the appellant's behavior are not dispositive, they lend further support to our finding that it was inappropriate.

called him the wrong name because he repeatedly mispronounced his name despite several corrections, and that he viewed the mispronunciations as a "slap in the face" given his status as a child of immigrant parents who came to the United States with "literally nothing," and given that a family name holds significant honor in his culture. HT at 155-56 (testimony of Midshipman R.J.). During the investigation, a number of other students remarked upon the appellant's mispronouncing of names, specifically Asian names. *See, e.g.,* IAF, Tab 8 at 13, 46, 58, 62, 68, 70, 85. In his deposition, the appellant stated three times that he did not "recollect" mispronouncing the student's name, although he then denied that it happened after being specifically asked whether he denied mispronouncing the name. IAF, Tab 28 at 78-79. In his written reply to the panel, he acknowledged that, while he tries to get names right, he "can't always." He denied making a "f*** you" comment, IAF, Tab 8 at 129, although that was not specifically what Midshipman R.J. had claimed.

In finding this specification not sustained, the administrative judge questioned Midshipman R.J.'s credibility because, when he was interviewed by the panel, he stated that he was unsure whether the mispronunciation was "done on purpose," and because, while he stated that the appellant used profanity in the classroom, and that two or three times it was directed at him personally, he did not mention the "f*** off" comment. IAF, Tab 8 at 60; ID at 15. The administrative judge also found a lack of corroboration of this specification by the rest of the class. ID at 15.

On review, the agency argues that the administrative judge's credibility determination was not demeanor-based, and that it therefore should not be afforded deference. PFR File, Tab 7 at 47. However, the Board has held that a credibility determination made after an in-person hearing is at least implicitly based on witness demeanor. *Aldridge v. Department of Agriculture,* 111 M.S.P.R. 670, ¶ 11 (2009). Such demeanor-based credibility determinations are entitled to deference and may only be overturned when the Board has "sufficiently sound"

reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). There are sufficiently sound reasons in this case for us to find Midshipman R.J. a credible witness notwithstanding the administrative judge's finding to the contrary. Midshipman R.J.'s testimony was consistent with his complaint and supported by other students' accounts as to the appellant's mispronouncing of students' names. Although Midshipman R.J. informed the panel that it was "[h]ard to tell if it was done on purpose," he nevertheless "felt it was directed intentionall[y]" at him. IAF, Tab 8 at 60. As stated above, the appellant elected not to testify at the hearing. *See Scott v. Department of Justice*, 69 M.S.P.R. 211, 229 (1995) (noting that, in weighing the evidence, that the appellant did not explain why he did not testify under oath or provide a sworn statement), *aff'd*, 99 F.3d 1160 (Fed. Cir. 1996). That the appellant did not recall mispronouncing Midshipman R.J.'s name is not the same as denying that it occurred. *Hillen v. Department of the Army*, 50 M.S.P.R. 293, 302 (1991). His denial, in turn, occurred only after he had stated three times that he did not "recollect" doing so, and only after he was specifically asked whether he denied it. *See Spurlock v. Department of Justice*, 894 F.2d 1328, 1330 (Fed. Cir. 1990) (holding that self-contradiction and imprecision detract from the weight to be accorded the evidence upon which an administrative board bases its decision). For these reasons, we find that Midshipman R.J.'s account is credible and that the appellant engaged in conduct unbecoming as specified.

## Specification (7) is sustained.

In this specification, the agency alleged that the appellant made demeaning sexually related comments about an adolescent girl attending a dance with his son and similar offensive comments about the girl's mother. IAF, Tab 7 at 79. Midshipman M.D. reported that the appellant said that the appellant called the girl a "slut" who was "looking for something more," and said that her short dress suggested her sexual intentions. IAF, Tab 7 at 118. According to Midshipman M.D., the appellant then showed the class a photo of the girl with his son, again

focusing on the shortness of her dress, and also made fun of her mother's physical features, skirt length, clothing choices, and parental decision-making. *Id.* at 119. Midshipman M.D.'s hearing testimony was in accord, HT at 100-01 (testimony of Midshipman M.D.), as was the testimony of another student, HT at 158-59 (testimony of Midshipman J.R.). Two of the other students who filed complaints also mentioned this incident, IAF, Tab 7 at 129, 131, as did a number of the students who were interviewed by the panel. *See, e.g.,* IAF, Tab 8 at 7, 11, 13, 15, 17, 21, 25, 27, 29, 31, 33, 37, 41, 82. The appellant admitted to these actions in his email to the panel. *Id.* at 128.

Regarding this specification, the administrative judge found that there was no prohibition against discussing either one's family or sexual topics, and that because there was no misconduct, the specification was not sustained. ID at 15. We disagree with the administrative judge's reasoning.

There is no dispute that the appellant made the comments in question. IAF, Tab 7 at 107-08; ID at 15. An agency is not required to describe in detail all potentially prohibited employee conduct and the resulting discipline. Rather, an agency may reasonably require its employees to exercise good judgment, notwithstanding a lack of literal guidance from an agency rule, regulation, or other statement of policy. *Byers v. Department of Veterans Affairs*, 89 M.S.P.R. 655, ¶ 24 (2001). Here, given the Academy's commitment to the principles of dignity and respect, the appellant should have known that his actions would be considered inappropriate and could constitute actionable misconduct. In particular, the appellant should have known that making demeaning sexual comments about an adolescent would constitute conduct unbecoming a Federal employee. This specification is sustained.

The agency's charge is sustained.

Because we have found all of the specifications sustained, the charge of Conduct Unbecoming is sustained.[12] *See Johnson v. Small Business Administration*, 97 M.S.P.R. 571, ¶¶ 24-25 (2004).

The agency has established a nexus between the sustained misconduct and the efficiency of the service.

In addition to the requirement that an agency must prove the charge it has brought against the appellant, it must also prove that there is a nexus, i.e., a clear and direct relationship between the articulated grounds for the adverse action and either the appellant's ability to accomplish his duties satisfactorily or some other legitimate government interest. *Canada v. Department of Homeland Security*, 113 M.S.P.R. 509, ¶ 10 (2010). Here, the charge bears on the Academy's mission of preparing midshipmen morally, mentally, and physically to fulfill their leadership role in the Navy and Marine Corps, and of the importance of training midshipmen to treat others with dignity and respect and to build trust between these future leaders and their subordinates, who will be asked to follow their commands. HT at 9-10 (testimony of Commandant). Every member of the Academy, including civilian faculty like the appellant, is expected to act in a manner that reflects the core values and principles being taught. HT at 11 (testimony of the Commandant). We therefore find that the agency has established a nexus between the sustained misconduct and the efficiency of the service. *See Canada*, 113 M.S.P.R. 509, ¶ 11 (finding nexus, based on conduct adversely affecting the agency's mission, when the appellants, who were first-line

---

[12] As noted, the administrative judge found that the appellant did not establish his claims that, in taking this action, the agency retaliated against him for engaging in whistleblowing, violated his First Amendment rights, and committed harmful procedural error. ID at 16-18. The appellant has not filed a petition for review challenging the administrative judge's findings not sustaining any of these affirmative defenses. Therefore, and because, based on our review, we determine the findings to be well supported, we will not disturb them. *See* 5 C.F.R. § 1201.115 (providing that the Board normally will consider only issues raised in a timely filed petition or cross petition for review).

supervisors, oversaw a young and impressionable workforce of junior employees who looked to the appellants for guidance and direction).

## The agency has shown that removal is a reasonable penalty for the sustained misconduct.

When, as here, all of an agency's charges are sustained, the Board will review the agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within the tolerable limits of reasonableness. In making this determination, the Board must give due weight to the agency's primary discretion in maintaining employee discipline and efficiency, recognizing that the Board's function is not to displace management's responsibility, but to ensure that management's judgment has been properly exercised. *Powell v. U.S. Postal Service*, 122 M.S.P.R. 60, ¶ 12 (2014).

Here, in arriving at his decision to affirm the appellant's removal, the deciding official considered the factors set forth by the Board in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), as appropriate in making a penalty determination. IAF, Tab 7 at 21-24. In so doing, he concurred in the analysis of the *Douglas* factors made by the proposing official. *Id.* at 79-83. The most important of these factors is the nature and seriousness of the offense. *Boo v. Department of Homeland Security*, 122 M.S.P.R 100, ¶ 18 (2014). Regarding this factor, the deciding official found that the appellant's misconduct was intentional and repeated, and that it occurred both in the classroom and in emails to students. IAF, Tab 7 at 21. In considering the appellant's job level and type of employment, the deciding official found that, as a senior faculty member and instructor of future Navy and Marine Corps leaders, the appellant's conduct fell short of the requirement that he establish and maintain a classroom environment that respects the dignity of the individual and develops an appreciation for an appropriate superior-subordinate relationship. *Id.* at 22. The deciding official also considered that, since 2013, the appellant was formally counseled twice and received a letter of reprimand regarding his

unprofessional behavior. *Id.* The deciding official noted that the appellant had been formally counseled against sending partially clothed photos of himself to students, yet repeated this conduct. *Id.* at 23. Based on the appellant's insistence that his actions were proper and that he is entitled to continue such behavior, the deciding official indicated that, in his view, the appellant lacks rehabilitative potential, stating that he lacks confidence that the appellant will perform at a satisfactory level in the future and change his behavior. *Id.* at 23-24. The deciding official also stated that removal is within the range of remedies in the agency's table of penalties for a similar offense of inappropriate conduct. *Id.* at 24. The deciding official considered mitigating factors, including the appellant's lengthy service as a faculty member, his satisfactory official performance ratings, and his receipt of performance awards in the 1990s. *Id.* at 22. Despite these factors, the administrative judge concluded that removal was the appropriate penalty. *Id.* at 20. Apart from a pro forma statement in his initial appeal form, IAF, Tab 1 at 6, the appellant has not contested the agency's penalty determination.

Based on our review, we find that the deciding official carefully considered the appropriate *Douglas* factors, and we agree that removal is within the parameters of reasonableness for the sustained charge. We therefore defer to the agency's penalty determination.

## NOTICE OF APPEAL RIGHTS[13]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most

---

[13] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at

http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[14]  The court of appeals must <u>receive</u> your petition for

---

[14] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195,

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    *Jennifer Everling*
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.